1
2
3
4              UNITED STATES DISTRICT COURT
5                   DISTRICT OF NEVADA
6                          * * *
7   JEFFREY SHERMAN et al.,              Case No.2:24-CV-2391  JCM (MDC)

8                        Plaintiff(s),

9        v.                                        ORDER

10  CARL HORNUNG LLC, et al.,

11                       Defendant(s).

12

13        Presently before the court is plaintiffs Jeffrey Sherman and La Mont Garner's (collectively
14  "plaintiffs") motion for default judgment.  (ECF No. 18).  Defendants Carl Hornung and Carl
15  Hornung, LLC (collectively "defendants") did not respond.

16  **I.      Background**

17        This dispute arises out of a labor dispute.  Defendants owned and operated a call center in
18  Las Vegas, Nevada.  (ECF No. 1 at 3).  Plaintiffs were employed by defendants as at-will,
19  nonexempt employees.  (*Id.*).  Plaintiffs allege that defendants did not pay them minimum wage
20  or overtime, in violation of the Fair Labor Standards Act of 1938, as amended, §201(b), et seq.
21  (hereinafter the "FLSA").  (*Id.* at 6–8).

22        On December 22, 2024, plaintiffs filed their complaint and properly served defendants.
23  (ECF Nos. 1; 9).  Defendants failed to appear and defend, and on March 12, 2025, the clerk entered
24  default.  (ECF No. 13).

25  **II.     Legal Standard**

26        Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default
27  judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  "First, a party must obtain
28  a clerk's entry of default under Rule 55(a)," and second, "the party may seek entry of default

1   judgment under Rule 55(b)." *Doe v. Jeffries*, No. 18CV2021-MMA (JMA), 2018 WL 6582832,

2   at *1 (S.D. Cal. Oct. 17, 2018) (citing *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923

3   (9th Cir. 2009)).  The court considers seven factors in determining whether to grant default

4   judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute concerning material facts; (6)
> whether the default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

**III.    Discussion**

A.  <u>Procedural requirements</u>

The required procedures described in Federal Rule of Civil Procedure 55 have been

satisfied.  The clerk entered default on March 12, 2025.  (ECF No. 13).

B.  <u>Factors for default judgment against defendants</u>

The *Eitel* factors, discussed below, weigh in favor of granting default judgment.

*1.  Possibility of prejudice*

The first *Eitel* factor requires the court to consider the possibility that plaintiff will suffer

prejudice if default judgment is denied.  *Eitel*, 782 F.2d at 1471.  Here, defendants have not filed

a responsive pleading, despite being adequately served.  Plaintiffs served the individual defendant

Carl Hornung but not the corporate entity defendant Carl Hornung, LLC because it was dissolved.

(*See* ECF No. 18-1).  The individual defendant failed to appear in this action, nor has he filed any

pleading.  Plaintiffs will have no other recourse for recovery if default is denied.  Thus, this factor

weighs in favor of default judgment.

*2.  Merits of claim and sufficiency of complaint*

The second and third *Eitel* factors analyze the substantive merits of plaintiff's claim and

the sufficiency of the complaint.  *See Eitel*, 782 F.2d at 1471.  To warrant default judgment, the

allegations in the complaint must be sufficient to state a claim upon which relief can be granted.

*Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  "The general rule of law is that upon

1    default the factual allegations of the complaint, except those relating to the amount of damages,

2    will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)

3    (citation omitted).

4        The elements of an FLSA claim are: 1) plaintiff was employed by defendant during the

5    relevant period; 2) plaintiff was [a covered employee]; and 3) the defendant failed to pay plaintiff

6    minimum wage and/or overtime pay. *Quinonez v. Reliable Auto Glass, LLC*, No. CV-12-000452-

7    PHX-GMS, 2012 WL 2848426, at *2 (D. Ariz. July 11, 2012).

8        Plaintiffs sufficiently established that they were employed by defendant during the relevant

9    period as covered employees.[1]  (ECF No. 1, ¶¶ 1, 7, 8, 13, 14, 15).  Plaintiffs also established that

10   defendants were a covered employer because the corporate defendant was an enterprise engaged

11   in interstate commerce and had annual gross sales of at least $500,000 in 2024.  (*Id.* at ¶¶ 10, 11,

12   12).

13       Plaintiffs further established that in performing their job duties, they were engaged in

14   interstate commerce within the meaning of 29 U.S.C. §§203(b), 203(l), 203(o), 203(r), 203(s),

15   206(a) and 207(a) in that they used the instrumentalities of interstate commerce in their work, and

16   the work performed by plaintiffs was directly essential to the business of Carl Hornung, LLC.  (*Id.*

17   at ¶ 13).  Defendant Carl Hornung was an officer and/or administrator of and a direct or indirect

18   supervisor and employer of plaintiffs in that he was the manager of defendant Carl Hornung, LLC

19   and acted directly in the interest of Carl Hornung, LLC, in relation to its employees—including

20   plaintiffs—and he exercised control over the employment relationship and could determine how

21   the employees were paid.  (*Id.* at ¶ 9).

22       Plaintiffs established that they worked in excess of forty hours per week, defendants knew

23   that they were working more than forty hours, and defendants failed to pay plaintiffs as required

24   by the FLSA.  (*Id.* at ¶¶ 14, 13, 15, 17).  Further, defendant Carl Hornung was aware of the FLSA

25   requirements but intentionally failed to and/or showed reckless disregard for complying with the

26   requirements of the FLSA, entitling plaintiffs to liquidated damages.  (*Id.* at ¶ 18).  Lastly, plaintiffs

27   _____

28   [1] Plaintiff Jeffrey Sherman has satisfied the "economic realities" test and is therefore a covered employee.
*See Acosta v. Wellfleet Communications, LLC et al.*, Case No. 2:16-cv-02353-GMN-GWF (D. Nev. Sept. 29, 2018).

1    established that the firing of Jeffrey Sherman was in retaliation for raising complaints about not

2    being paid as required by the FLSA.  (*Id.* at ¶¶ 19, 20).

3        Taken together, this factor supports default judgment.

4        *3.  Money at stake*

5        The third *Eitel* factor requires the court to consider the amount of money at stake in relation

6    to the seriousness of defendants' conduct.  *See Eitel*, 782 F.2d at 1471.  "[D]efault judgment is

7    disfavored when a large amount of money is involved or is unreasonable in light of the

8    [d]efendant's actions."  *Warrington v. Taylor*, 2022 WL 2062921, at *3 (C.D. Cal. Mar. 9, 2022)

9    (quoting *Valentin v. Grant Mercantile Agency, Inc.*, 2017 WL 6604410, at *7 (E.D. Cal. Dec. 27,

10   2017)).

11       Plaintiffs have alleged and established that they were not paid as required by the FLSA.

12   Plaintiffs have calculated that they are owed $5,475.60 and $8,361.60, respectively, which

13   includes liquidated damages under Section 216(b) of the FLSA.  Plaintiff Jeffery Sherman also

14   alleged that his employment was terminated due to unlawful retaliation under the FLSA and that

15   he is owed an additional $21,060.60 in back pay to redress such retaliation.[2]

16       These amounts are not relatively high and constitute wages lawfully earned and

17   compensation for wrongful termination of employment, and as such this *Eitel* factor weighs in

18   favor of granting a default judgment.  *See Hung Chia Chang v. Major League Constr.*, CV-25-

19   00131- PHX-MTL (D. Ariz. Jun 17, 2025) (finding that approx. $5,000 in wages owed to plaintiff

20   was not so "substantial or unreasonable" as to discourage default judgement).  Accordingly, this

21   factor weighs in favor of default judgment.

22       *4.  Whether default was due to excusable neglect*

23       The fourth *Eitel* factor requires the court to consider whether the default was due to

24   excusable neglect.  *Eitel*, 782 F.2d at 1472.  Here, defendant Carl Hornung was personally served

25   with the summons and complaint.  (ECF No. 9).  After being served with the complaint, Hornung

26   contacted plaintiffs' counsel by telephone and discussed the case.  (*See* ECF No. 18-1).  Lastly,

27   ───────────────

28       [2] While plaintiff Jeffery Sherman's wrongful termination damage calculation is reasonable for the purpose
     of the *Eitel* factors, the court discusses the damage award *infra*.

- 4 -

1    Hornung was served with the initial motion for default judgment yet remained absent.  (ECF No.

2    14).  This factor weighs in favor of default judgment.

3                    *5.  Possibility of dispute concerning material facts*

4            The fifth *Eitel* factor requires the court to consider whether there is a dispute over material

5    facts.  *See Eitel*, 782 F.2d at 1471–72.  "The general rule of law is that upon default the factual

6    allegations of the complaint, except those relating to the amount of damages, will be taken as true."

7    *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560

8    (9th Cir. 1977)).  Since defendants have not filed any motions or responsive pleadings in this case,

9    they have not contradicted any of the allegations, and there cannot be a possibility of dispute.  This

10   factor weighs in favor of default judgment.

11                    *6.  Public policy favoring a decision on the merits*

12           The final *Eitel* factor is whether there is a strong policy favoring a decision on the merits.

13   *Eitel*, 782 F.2d at 1472.  Although this factor inherently favors decisions on the merits, "this

14   preference, standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In fact,

15   when a defendant fails to respond to the plaintiff's complaint, ignores requests to participate in

16   litigation, and fails to demonstrate an intent to defend the action, this factor shifts in favor of default

17   judgment.  *See Sideshow, Inc. v. Damon*, 2020 WL 8093348, at *4 (C.D. Cal. Nov. 16, 2020).

18           Here, defendants have failed to appear or otherwise respond to plaintiffs' complaint.

19   Defendants have not demonstrated an intent to defend themselves in this action. This factor weighs

20   in favor of default judgment.

21   **IV.    Remedies**

22           A.  <u>Damages</u>

23           Although the court enjoys discretion when determining the amount of damages, *see* Fed.

24   R. Civ. P. 55(b)(2), "[t]he general rule of law is that upon default the factual allegations of the

25   complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys.,*

26   *Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  "It is well settled that a default judgment

27   for money may not be entered without a hearing unless the amount claimed is a liquidated sum or

28   capable of mathematical calculation."  *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

1    For violations of the FLSA's minimum and overtime wage provisions, employers "shall be

2    liable to the ... employees affected in the amount of ... overtime compensation, as the case may be,

3    and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1999); *see*

4    *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84 (1942) (observing that FLSA

5    liquidated damages are not penalties exacted by law, but, rather, compensation to the employee

6    occasioned by the delay in receiving wages due).

7    *1. Plaintiff La Mont Garner*

8    Plaintiff La Mont Garner alleges that he is entitled to $4,180.80 because of defendants'

9    underpayment. (ECF No. 18-2 at 3). Garner was employed by defendants from on or about March

10    1, 2021, to March 4, 2023, and worked over 53 hours per week. (*Id.* at 2). Garner claims he was

11    not paid as required by FLSA since he was paid $500 per week, or $9.43 per hour—which was

12    lower than the mandated hourly wage of $9.75. (*Id.* at 2–3). Garner used the following formula

13    to determine his unpaid wages: "(a) minimum wages of $881.92 ($0.32 ($9.75 – 9.43) x 53 hours

14    per week x 52 weeks), plus (b) overtime wages of $3,298.88 ($4.88 (half time) per hour x 13 hours

15    per week x 52 weeks)." (*Id.* at 3). The court finds this calculation reasonable and adequate to

16    compensate for defendants' underpayment of Garner.

17    Garner further claims he is entitled to liquidated damages because defendants willfully

18    violated the FLSA. Because the court has found that defendants acted willfully, *see supra*, Garner

19    is entitled to liquidated damages equal to the amount of his unpaid minimum wages. *See* 29 U.S.C.

20    §216(b); *see also Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016). Garner is thus

21    entitled to a total of $8,361.60.

22    *2. Jefferey Sherman*

23    Plaintiff Jefferey Sherman alleges he is owed $2,737.80 in unpaid wages. (ECF No. 18-

24    3). Sherman was employed by defendants from on or about February 28, 2023, to April 16, 2023,

25    and worked over 50 hours per week. (*Id.* at 2–3). Sherman states that he was paid only $480

26    during his entire employment, or $1.60 per hour. (*Id.* at 3). Sherman used the following formula

27    to determine the amount he is owed in unpaid wages: "(a) minimum wages of $3,340.00

28    ($9.75/hour x 40 hours per week x 6 weeks); plus (b) overtime wages of $877.80 ($14.63 x 10

1  hours per week x 6 weeks); less (c) $480.00, plus liquidated damages of the same amount, so the

2  total amount owed [] is $5,475.60."  (*Id.* at 4).  The court finds this calculation of unpaid wages

3  and the addition of the liquidated damages to be reasonable and sufficient.  Thus, Sherman is

4  entitled to a total amount of $5,475.60 in unpaid wages.

5       Sherman stated that immediately prior to his termination, he complained to defendants that

6  he was not being paid as required by the FLSA and threatened to report defendants to the U.S.

7  Department of Labor if the failure was not rectified.  (ECF No. 1 at 5).  Sherman's termination

8  after making such a complaint violated the FLSA's anti-retaliation provision.[3]  29 U.S.C. §

9  215(a)(3).

10      The FLSA permits plaintiffs to recover back pay when they are retaliatorily fired.  29

11  U.S.C. § 216(b).  Sherman claims that he is entitled to $21,060.00 in back pay, representing one

12  year of full-time employment since he has been unemployed since being terminated by defendants.

13  (*See* ECF No. 18-2 at 4).  The court finds this time period excessive.

14      Courts assess the adequacy of a back pay award by comparing the plaintiff's subsequent

15  employment with those experienced under the prior, offending employer.  *See e.g.*, *Andrade v.*

16  *Arby's Rest. Grp., Inc.,* 225 F. Supp. 3d 1115, 1140 (N.D. Cal. 2016) (discussing back pay and

17  comparing hourly wage and hours worked of subsequent employment with violating offender).

18  Sherman has not provided the court with any information regarding if and how he was searching

19  for employment.  The court declines to award back pay without such information and will award

20  only the $5,475.60 in unpaid wages.  However, Sherman is granted leave to supplement if he can

21  produce sufficient information on this point.[4]

22  . . .

23  . . .

24

25  [3] Under the FLSA's anti-retaliation provision, an employer may not "discharge or in any other manner
discriminate against any employee because such employee has filed any complaint or instituted or caused to be

26  instituted any proceeding under or related to" the FLSA.  29 U.S.C. § 215(a)(3).  "To prove a retaliation claim, a
plaintiff must show that (1) [they] engaged in a protected activity; (2) [they] suffered an adverse employment action;

27  and (3) there is a causal link between the protected activity and the adverse employment action."  *Allen v. Vocatus,
LLC*, 645 F. Supp. 3d 1037, 1045 (D. Nev. 2022) (citation and quotation marks omitted).

28  [4] The court is granting leave to supplement on the narrow ground of supplementing Sherman's back pay
claim.  No other arguments are to be made if plaintiffs elect to take this path forward.

B.  Attorney's fees

Under the FLSA, attorney's fees may be calculated according to the "lodestar" method, whereby the reasonable number of hours expended on successful claims is multiplied by the attorney's hourly fee based on the prevailing market rate.  *See Ulin v. Lovell's Antique Gallery,* No. 11–17698, 2013 WL 2996547, at \*2 (9th Cir. 2013) (lodestar method applies to award of fees under FLSA).  The lodestar calculation, however, does not end the inquiry.  *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).  Attorney's fees to be compensated in an award must be "reasonable in relation to the success achieved."  *McGinnis v. Kentucky Fried Chicken of Cal .,* 51 F.3d 805, 810 (9th Cir. 1994) (quoting *Hensley,* 461 U.S. at 436).

The court finds that plaintiffs' counsel reasonably expended 25.5 hours in prosecuting this case.  However, an hourly rate of $550 is excessive in light of prevailing market rates for comparable work in this district.  The court instead finds a rate of $350 per hour to be reasonable and appropriate.  Thus, the lodestar method yields a total fee award of $8,925.  The court further finds that this amount is reasonable in relation to the degree of success obtained.

Furthermore, the court accepts plaintiffs' calculation of costs incurred and awards an additional $750.

C.  Conclusion

In sum, plaintiffs are entitled to:

1.  $8,361.60 representing damages owed to plaintiff La Mont Garner;

2.  $5,475.60 representing damages owed to plaintiff Jeffrey Sherman;

3.  $8,925 in attorney's fees, and;

4.  $750 in costs.

**V.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for default judgment (ECF No. 18) be, and the same hereby is, GRANTED consistent with the foregoing.

. . .

IT IS FURTHER ORDERED that, within 21 days, plaintiffs shall (a) submit a proposed order accepting the modified damages, OR (b) file supplemental briefing addressing the issues regarding plaintiff Sherman's back pay damages the court discussed *supra*.

DATED October 29, 2025.

_____
UNITED STATES DISTRICT JUDGE